**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE MOORE,** | : | **CIVIL ACTION NO. 1:05-CV-0828** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, Commissioner,** | : | |
| **Pennsylvania Department of** | : | |
| **Corrections; DAVID DIGUGLIELMO,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at Graterford,** | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which petitioner, Tyrone Moore ("Moore"), challenges his Pennsylvania state convictions. Petitioner is represented by counsel. He asserts that he was convicted in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. For the reasons that follow, the petition will be denied.

I.    **<u>State Court Proceedings</u>**

Moore was initially tried in the Court of Common Pleas of Luzerne County in May 1983, on charges of first degree murder, criminal conspiracy, robbery, theft by unlawful taking or disposition, and recklessly endangering another person. Moore was represented by two court-appointed attorneys. That trial ended in a mistrial because photographs, used during a suppression hearing but not introduced at trial, were inadvertently given to the jury at the time it commenced deliberations. <u>Commonwealth v. Moore</u>, 534 Pa. 527, 633 A.2d 1119, 1122, n. 2 (1993).

The same two court-appointed attorneys represented Moore when he was retried in September 1983, and convicted of all charges, including first degree murder, based on the following conduct:

> On October 1, 1982, at approximately 8:00 p.m., Nicholas Romanchick and his spouse, Karen Ann Marie Romanchick, arrived at the Forty-Fort Animal Hospital located in the Borough of Wyoming, Luzerne County, Pennsylvania.  The Romanchicks were greeted by Dr. Joseph Lopotofsky, who directed them to an examination room and commenced an examination of their cat. Dr. Lopotofsky's examination was interrupted when [Moore] and Ricardo Scott entered the entrance area of the animal hospital claiming that they had hit a dog with their vehicle.  Dr. Lopotofsky directed them to bring the dog in, and returned to his examination of the Romanchick's cat.

> [Moore] then entered the examination room holding a gun and ordered Dr. Lopotofsky and the Romanchicks to lie on the floor, while Scott, who was also brandishing a firearm, brought Dr. Lopotofsky's assistant, Barbara Nowakowski, to the examination room and forced her to the floor with the others.  Scott then began tying up the victims with adhesive tape under the watchful eye of [Moore].  After Scott had completed taping Lopotofsky and while he was taping Ms. Nowakowski, Nicholas Romanchich was shot once in the back. [Moore] and Scott immediately fled the animal hospital with Mrs. Romanchick's purse.

> Shortly thereafter, [Moore], Scott and a third man, Anthony Jones, arrived at the residence of Kenneth McGoy in Wilkes Barre, Pennsylvania, and upon departing, they left behind numerous items from Mrs. Romanchick's purse.   These items were subsequently disposed of in a storm drain by Mr. McGoy and later recovered by the authorities with the help of Mr. McGoy's girlfriend/roommate.

> As a result of the gunshot wound to his back, Nicholas Romanchick suffered extreme trauma to his pulmonary artery and superior pulmonary vein, coma, and death thirteen days later, resulting from brain damage caused by lack of oxygen.

Moore, 633 A.2d at 1123-24.

Post-trial motions for a new trial and arrest of judgment were denied on October 15, 1987. (Doc. 29-4, p. 2; Doc. 33, Ex. 10). Moore then filed an interlocutory appeal on the issue of double jeopardy. (Doc. 29-4, p. 2). The superior court quashed the appeal on July 27, 1988. (Id.) On September 23, 1988, the Pennsylvania Supreme Court denied his petition for allowance of appeal. (Id.) After a penalty hearing, on September 27, 1988, Moore was sentenced by the Court of Common Pleas of Luzerne County to: death on the criminal homicide; ten to twenty years imprisonment on the criminal conspiracy, consecutive to the sentence of death; and ten to twenty years imprisonment on the second robbery count, concurrent with the sentence for criminal conspiracy. (Id.) The trial court suspended sentences on the first robbery count and on the count of recklessly endangering another person, and did not sentence Moore on the theft by unlawful taking because it merged with the second count of robbery. Moore, 633 A.2d at 1122-23. He filed an automatic direct appeal to the Supreme Court of Pennsylvania, raising a number of issues. On November 9, 1993, the sentence of death was affirmed. (Id. at 1122). Moore's application for reargument was denied on February 23, 1994. (Doc. 29-2, p. 1).

He filed a petition for writ of certiorari to the United States Supreme Court, which was denied on January 17, 1995.  Moore v. Pennsylvania, 513 U.S. 1114 (1995).  Rehearing was denied on March 6, 1995.  Moore v. Pennsylvania, 514 U.S. 1010 (1995).

On January 10, 1997, he filed a petition pursuant to the Post Conviction Collateral Relief Act, 42 Pa.C.S. §§ 9541-9546 "(PCRA")".  On January 17, 1997, the PCRA court entered a Notice of Intention to Dismiss the motion.  At this juncture, the Center for Legal Education, Advocacy & Defense Assistance ("LEADA") entered its appearance and sought leave to amend the PCRA petition.  The request to amend was granted and, following investigation, LEADA filed an amended PCRA petition.  After an evidentiary hearing, the PCRA court concluded that the legal representation at sentencing was ineffective, vacated the death sentence and granted Moore a new penalty hearing.  The Supreme Court of Pennsylvania affirmed.  Commonwealth v. Moore, 580 Pa. 279, 860 A.2d 88 (Pa. 2004).[1]  Rehearing

---

[1]Some of Moore's claims were deemed previously litigated in the PCRA proceedings.  The court noted that "post-conviction review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief to support previously litigated claims."  Commonwealth v. Peterkin, 538 Pa. 455, 649 A.2d 121, 123 (1994); Commonwealth v. Bracey, 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001) (same); 42 PA C. S.A. § 9543(a)(3). Commonwealth v. Moore, 860 A.2d 88, 93. (Pa. 2004).  The PCRA state court review concluded that "Moore's arguments for these issues are nothing but retooled versions of his arguments on direct appeal; as such, they are previously litigated and he is not entitled relief."  Id.  A finding that a claim was "previously litigated" carries no implication of procedural error on the petitioner's part, and instead, indicates that the petitioner previously raised the claim, but was unsuccessful.  28 U.S.C. § 2254(c); 42 PA.C.S.A. § 9543(a)(3).

was denied.  Moore was re-sentenced to life imprisonment without parole on December 14, 2004.

## II.     **Claims Presented in Federal Petition**

All of the issues presented during the direct appeal, with the exception of those challenging the penalty phase, and a number of issues raised in the PCRA proceedings are pursued in the instant federal petition.  The claims can be broken down into the following categories:

A.     First Trial

     1.     Motions for Mistrial and Double Jeopardy Issues

          a.     Ineffective Assistance of Counsel

          b.     Trial Court Error

          c.     Commonwealth Error

B.     Retrial

     1.     Sufficiency of the Evidence

     2.     Trial Court Error

     3.     Ineffective Assistance of Counsel

          a.     Trial Counsel

          b.     Appellate Counsel

     4.     Commonwealth Error

     5.     After Discovered Evidence

## III.    Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner to challenge the "fact or duration" of his confinement.

Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a

federal habeas court to reexamine state-court determinations on state-law

questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas

review is restricted to claims based "on the ground that [petitioner] is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41

(1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.    Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies

have been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the

applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity

to review federal constitutional challenges to state convictions.  See Werts v.

Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of

the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S.

838, 844-45 (1999).  Respect for the state court system requires that the petitioner

demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989).  Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001);  Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989).   Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial

disadvantage, infecting the entire proceeding with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  Wenger, 266 at 224.  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.

In the matter *sub judice*, Moore has exhausted all but one of his claims.  He failed to present to the state courts the claim that the "[t]rial court erred in denying to petitioner, through present counsel, permission to retain expert services for investigation of various issues."  (Doc. 1, Issue IX, pp. 48-49).  Thus, this claim is unexhausted.  Because procedural rules bar him from pursuing this unexhausted issue in state court, he has procedurally defaulted on this claim.[2]  He has not averred cause for or prejudice by the default.  He has not demonstrated his actual innocence such that a lack of review by the court would constitute a fundamental

---

[2]The time period for filing a second PCRA has expired.  See 42 PA. CONS. STAT. § 9545(b)(1) (setting for a one year limitations period).  Moore raises no argument, and the record suggests no possibility, that his claims fall within an exception to the limitations period for filing a petition under the PCRA.  See 42 PA. CONS. STAT. §9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

miscarriage of justice.  See McCandless, 172 F.3d at 260.  Consequently, he is

precluded from pursuing federal habeas corpus relief with regard to this issue.  The

remaining claims will be considered on the merits.

**B.    Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent

part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is

not sufficient for the petitioner to show merely that his interpretation of Supreme

Court precedent is more plausible than the state court's; rather, the petitioner must

demonstrate that Supreme Court precedent requires the contrary outcome."

Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court

will only find a state court decision to be an unreasonable application of federal law

if the decision, "evaluated objectively and on the merits, resulted in an outcome that

cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume

that a state court's findings of fact are correct.  A petitioner may only rebut this

presumption with clear and convincing evidence of the state court's error.  Miller-El

9

v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard
in § 2254(e)(1) applies to factual issues, whereas the unreasonable application
standard of § 2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888;
Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of
correctness applies to both explicit and implicit findings of fact.  Campbell v.
Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must
clear a high hurdle before a federal court will set aside any of the state court's
factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual
determination should be adjudged "unreasonable" under paragraph (2) only if the
court finds that a rational jurist could not reach the same finding on the basis of the
evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278,
296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000);
cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires
the district court to step into the shoes of an appellate tribunal, examining the
record below to ascertain whether sufficient evidence existed to support the
findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp 2d
354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]).  Mere disagreement

---

[3]"If the applicant challenges the sufficiency of the evidence adduced in such
State court proceeding to support the State court's determination of a factual issue
made therein, the applicant, if able, shall produce that part of the record pertinent
to a determination of the sufficiency of the evidence to support such
determination."  28 U.S.C. § 2254(f).

with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 408-09 (2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  <u>Porter</u>, 276 F. Supp 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

**IV.**   **<u>Discussion</u>**

    **A.**   **First Trial**

        1.   <u>Motions for Mistrial and Double Jeopardy Issues</u>

Moore claims that his "Constitutional rights not to be placed twice in jeopardy were violated by his proceeding twice to trial. . . ." (Doc. 1, Issue V, pp. 34-39; Issue III(C), pp. 29-30).  During jury deliberations, counsel became aware that the jury was in possession of two photographs of Moore that had not been introduced into evidence, let alone admitted during trial.  (Doc. 33, Ex. 10, p. 8). One photo was a mug shot of Moore and the other purported to be Moore participating in a robbery and holding a revolver.  (Doc. 31, N.T. Trial #1, p. 684). Trial counsel moved for a mistrial, which the court initially denied because there was nothing of record to substantiate that the photos were actually in the possession of the jury.  (<u>Id.</u> at p. 685).  After confirming that the photos were in fact in the jury room, trial counsel renewed their motion for a mistrial.  (<u>Id.</u>)  After being fully advised that he would be subject to retrial, Moore consented to the mistrial.

(Id. at pp. 686-87).  The judge then declared a mistrial.  (Id. at pp.686-92; Doc. 33, Ex. 10, p. 9).

Moore argues:  (1) that his trial counsel were ineffective for moving for a mistrial a second time, (2) that the trial court erred when it made a *sua sponte* declaration of mistrial following his first trial, and (3) that the Commonwealth was grossly negligent in allowing the photographs to be included in the jury exhibit package, precluding retrial of the charges.  (Doc. 1, Issue V, pp. 35-39; Issue III(C), pp. 29-30).  When Moore presented these issues in his post-trial motions, the trial court concluded that these circumstances would not preclude a retrial.  (Doc. 33, Ex. 10, pp. 10, 27).  Moore's claims were dismissed on direct appeal by the Supreme Court without elaboration.  Moore, 633 A.2d at 1124, n. 11.

a.    <em>Ineffective Assistance of Counsel</em>

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).[4]  The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness.  See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).  As noted above, the trial court found

---

[4]The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

nothing that would preclude a retrial. (Doc. 33, Ex. 10, pp. 10, 27). Considering the

double jeopardy claim in the context of ineffective assistance of counsel, the

Pennsylvania Supreme Court articulated a standard which is clearly in line with

prevailing federal law:

> In order for [Moore] to prevail on a claim of ineffectiveness he
> must demonstrate that: (1) the underlying claim is of arguable
> merit; (2) the particular course chosen by counsel did not have
> some reasonable basis designed to effectuate his interests; and (3)
> counsel's ineffectiveness prejudiced him. Commonwealth v.
> Pierce, 515 Pa. 153, 527 A.2d 973 (1987). Furthermore, counsel can
> never be found ineffective for having elected not to raise a
> meritless claim. Commonwealth v. Pettus, 492 Pa. 558, 424 A.2d
> 1332 (1981); Commonwealth v. Giknis, 491 Pa. 215, 420 A.2d 419
> (1980).

Moore, 633 A.2d at 1131. Moore does not argue that this decision was contrary to, or

involved an unreasonable application of, clearly established federal law.

Moore contends that the state courts' conclusion that counsel was not

ineffective is insupportable and based on an unreasonable determination of the

facts in light of the evidence presented. (Doc. 1, Issue III(C), p. 29). Specifically, he

argues that there was no reason for counsel to move for a mistrial on a second

occasion because counsel had already protected Moore's rights with his initial

motion for a mistrial.[5]  Although the supreme court dismissed this contention

_____

[5]He suggests that "the only reason counsel was so eager to make the second
motion was to obtain a mistrial and hopefully be relieved of their duty to represent
Petitioner." (Doc. 1, p. 30). At the time the second motion for mistrial was filed, the
parties had been in trial for more than one week, approximately seventeen
witnesses had testified in the matter, more than forty exhibits had been introduced,
the testimony had concluded and the jury was deliberating. (Doc. 31, N.T. Trial #1).
To suggest that trial counsel were merely seeking to be relieved of their duties at

without elaboration, <u>Moore</u>, 633 A.2d at 1124, n. 11, the trial court addressed the issue at length.  As a threshold matter, the trial court recognized the applicable standard: "[a] Defendant who asserts that there has been ineffective assistance at trial must prove not only that counsel made an error in judgment, but also that that error prejudiced the outcome of the case."  Thereafter, the trial court found that there were no grounds for an ineffectiveness claim because the jury's possession of the nocent photographs provided "an exceedingly strong reason for granting a mistrial" and Moore "personally consented to the renewal of the Motion after having been fully advised of the consequences thereof."  (Doc. 33, Ex. 10, pp.7, 9-10)(citations omitted).  This decision is wholly supported by the record.  Trial counsel were faced with the fact that two "manifestly prejudicial" photos of Moore were inadvertently placed in the hands of the jury.  (Doc. 33, Ex. 10, p. 10).  Upon becoming aware of this, trial counsel notified Moore of the need to move for a mistrial and clearly informed him that it was not grounds for double jeopardy and the case would be rescheduled at a later time.  (Doc. 33, N.T. Trial #1, p. 687).  Counsel also gave Moore the option of not proceeding with the motion for mistrial and informed him of the consequences of that alternative.  (<u>Id.</u> at p. 688).  Moore chose to proceed with the motion for a mistrial.  (<u>Id.</u>)  During the colloquy on the subject, Moore indicated that he agreed with counsel that he would be tried again and stated that he would not raise the defense of double jeopardy.  (<u>Id.</u>)  There is no

_____

this late stage of the proceedings is ludicrous and the court flatly rejects this notion.

question that the state court decision was based on a reasonable determination of the facts in light of the evidence presented.

> b. *Trial Court Error*

Moore also argues that "the record indicates that it was the <u>Court</u> which <u>encouraged</u> the second motion [for a mistrial], thus making the Court's action a **sua sponte** declaration of mistrial."  (Doc. 1, Issue V, p. 35) (emphasis in original).  He further contends that "Since this declaration of mistrial was entirely the Court's own doing, then any acquiescence by Petitioner is irrelevant. . . .  Since there was no 'manifest necessity' in the Court declaring a mistrial at that time, after first having refused to do so, then retrial of Petitioner is barred.  <u>Jorn v. U.S.</u> [sic], 400 U.S. 470 (1971)."  (<u>Id.</u>)

In considering this claim, the state court found as follows:

> A sua sponte declaration of mistrial by the Court constitutes a bar to retrial unless there was an exceedingly strong reason for granting the mistrial.  <u>U.S. v. Jorn</u>, 400 U.S. 470 (1971).  We do not accept the argument of Defendant's present counsel that there was a sua sponte declaration in this instance, it being evident from the record that Defendant's trial counsel renewed their Motion for Mistrial, and that Defendant personally consented to the renewal of that Motion after having been fully advised of the consequences thereof.  However, even if we were to accept the argument that the declaration of a mistrial in this instance was made sua sponte, it is apparent to us that there was an exceedingly strong reason for granting a mistrial.  The Court, after having heard all of the evidence, obviously was of the opinion that it would be an utterly useless exercise to allow the jury to enter a verdict after having in its possession the photographs so manifestly prejudicial to Defendant.

(Doc. 33, Ex. 10, p. 10).  Moore's contention that the mistrial was a *sua sponte* dismissal has no support in the record.  The court initially denied the motion for mistrial and the parties awaited the jury's verdict.  (Doc. 31, N.T. Trial #1, p. 685). Later that afternoon, the proceedings reconvened, outside the presence of the jury, and the following exchange took place:

| | |
|---|---|
| Mr. Flannery: | Your Honor, at this time after discussion with the Assistant D.A., we are going to renew our motion for a mistrial based on the reasons that I gave to you earlier. |
| The Court: | Has it been confirmed that the photograph in question or the photos in question have been sent out with the jury prior to the jury beginning its deliberations? |
| Mr. Flannery: | I could at this time put the Stenographer on the stand to testify to that. |
| The Court: | All right. |

(Id. at pp. 685-86).  It is clear that the subject of the mistrial was raised the second time by trial counsel, and trial counsel alone.  Moore is not entitled to relief on this claim.

c.     *Commonwealth Error*

Moore's final double jeopardy argument is based on the proposition that "[i]f the prosecutor's action is intended to 'goad' a defendant into moving for a mistrial, then retrial is barred by the Double Jeopardy clause.  Oregon v. Kennedy, 456 U.S. 667 (1982)."  (Doc. 1, p. 37).  On this issue, the state court opined:

> Present counsel for Defendant cite <u>Commonwealth v. Bolden</u>, 472
> Pa. 602, 373 A.2d 90 (1977) for the proposition that retrial is barred
> by the double jeopardy clause in a case in which a mistrial is
> ordered on defendant's motion due to intentional or grossly
> negligent misconduct on the part of the prosecutor, and the
> argument is made that there was such intentional or grossly
> negligent misconduct in this instance. We find nothing in the
> record to substantiate the assertion made by Defendant's present
> counsel. No one appears to know how the photographs in question
> happened to be taken into the jury room. They were initially in the
> possession of the Assistant District Attorney in charge of
> prosecution. They were used during the suppression hearing
> preceding trial. Somehow, at some later point in time, they
> reached the jury room. These are the facts, and none of these facts
> are sufficient to establish gross negligence on the part of the
> prosecution or to establish prosecutorial misconduct of such a
> nature as to show an intent on the part of the prosecution to
> subvert the protection afforded by the double jeopardy clause.
> Under such circumstances there was nothing to preclude a retrial
> of Defendant. <u>Oregon v. Kennedy</u>, 456 U.S. 667 (1982);
> <u>Commonwealth v. Riffert</u>, 322 Pa.Super. 230, 469 A.2d 267 (1983).

(Doc. 33, Ex. 10, p. 10).

An evidentiary hearing was held on the issue. The court stenographer, who

was the official reporter for the suppression hearing at which the photos were used,

and was also the official reporter of the trial, testified that the photos were in the

jury deliberation room. (Doc. 31, N.T. Trial #1, pp. 689-691). Moreover, it was

undisputed that the photos "were *inadvertently* distributed to the jury. . . ." (<u>Id.</u> at

p. 693) (emphasis added).

Moore has failed to meet his burden of establishing that the decision was

contrary to, or involved an unreasonable application of, clearly established federal

law, or was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.

17

**B.      Retrial**

1.      <u>Sufficiency of the Evidence</u>

Moore claims that the verdict was not supported by sufficient evidence.

(Doc. 1, Issue VII, pp. 43-46).  In its analysis of the sufficiency of the evidence, the

Pennsylvania Supreme Court was guided by the following standard of review:

> As in all cases where the death penalty has been imposed this Court must conduct an independent review of the sufficiency of the evidence without regard to whether the appellant has challenged the conviction on that ground. <u>Commonwealth v. Zettlemoyer</u>, 500 Pa. 16, 26-27 n. 3, 454 A.2d 937, 942 n. 3 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for establishing sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. <u>Commonwealth v. Rhodes</u>, 510 Pa. 537, 510 A.2d 1217 (1986).

<u>Commonwealth v. Moore</u>, 633 A.2d at 1123-24.  Thereafter, the state supreme court

carefully reviewed the factual record and concluded that "the Commonwealth

presented sufficient evidence to sustain [Moore's] convictions."  (Doc. 29-1,

<u>Commonwealth v. Moore</u>, 633 A.2d 1123-24).

The state supreme court's analysis is clearly in accord with applicable

federal law.  Sufficiency of the evidence claims are governed by <u>Jackson v. Virginia</u>,

443 U.S. 307 (1979), in which the Supreme Court held that the question for habeas

courts is "whether, after reviewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt."  <u>Id.</u> at 319.

18

When historical facts support conflicting inferences, the habeas court must presume that the trier of fact resolved those conflicts in favor of the prosecution.  Id. at 326.  The habeas court must also consider the types of evidence the state courts deem relevant to prove the elements of the offense at issue because the elements of the criminal offense are defined by state law.  Id. at 324 n. 16.

With regard to the charge of criminal homicide, it is Moore's position that "nothing in the record supports the finding that the person alleged to be Petitioner ever acted with specific intent to kill."  (Doc. 1, p. 44).  Under Pennsylvania law, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."  18 PA. C. S. A. § 2501. Criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.  Id. at  § 2502(a).  The state supreme court held that there was sufficient evidence to support the first degree murder conviction, relying on the following evidence:

> [Moore] then entered the examination room holding a gun and ordered Dr. Lopotofsky and the Romanchicks to lie on the floor, while Scott, who was also brandishing a firearm, brought Dr. Lopotofsky's assistant, Barbara Nowakowski, to the examination room and forced her to the floor with the others. Scott then began tying up the victims with adhesive tape under the watchful eye of [Moore].  After Scott had completed taping Dr. Lopotofsky and while he was taping Ms. Nowakowski, Nicholas Romanchick was shot once in the back. [Moore] and Scott immediately fled the animal hospital with Mrs. Romanchick's purse.
>
> As a result of the gunshot wound to his back, Nicholas Romanchick suffered extreme trauma to his pulmonary artery and superior pulmonary vein, coma, and death thirteen days later, resulting from brain damage caused by lack of oxygen.

19

> The Commonwealth presented the testimony of Dr. Lopotofsky, Ms. Nowakowski, Mrs. Romanchick, and Mr. Scott, who testified similarly concerning the manner in which the events had transpired that evening.  While none of these witnesses actually saw [Moore] shoot Nicholas Romanchick, the jury could have reasonably inferred from their testimony that [Moore] shot Nicholas Romanchick, especially considering the testimony of Mr. Scott who stated that he had given his gun to [Moore] when he began taping Dr. Lopotofsky.

Moore, 633 A.2d at 1123-24.

> [W]e simply refuse to accept the validity of the proposition that a man who enters another man's office or dwelling, armed with a revolver, and with the intent to commit armed robbery, and who then shoots and kills at point blank range a man who attempts to prevent the commission of the robbery, can be heard to seek a reduction of the magnitude of his offense from first degree murder to second or third degree murder or manslaughter on the theory that he lacked a specific intent to kill.  A jury could just as readily infer that he had from the very inception of the plan a specific intent to kill anyone who attempted to stand in his way and prevent the commission of the robbery.  Tr.Ct.Op. pp. 4-8.

Id. at 1133-34.  The supreme court's analysis is cogent and entirely consistent with federal standards.  Moore is not entitled to relief on this claim.

Moore includes two other claims under the heading of sufficiency of the evidence.  First, he argues that the robbery and conspiracy charges must fail because the Commonwealth failed to file theft charges against him with regard to Dr. Lopotofsky.  (Doc. 1, Issue VII, pp. 43-44).  The court declines to consider this argument.  It is well-settled that a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions." <u>Estelle</u>, 502 U.S. at 67-8.  Moore is challenging the validity

of the criminal charges brought against him, not the sufficiency of the evidence

adduced at trial to support those charges.  The criminal complaint requirements are

governed by state law and procedures.  <u>See</u> PA. R. CRIM. P. 504(6)(a) (setting forth

information that must be contained in a criminal complaint).  Any claim of error in

the charging document would be grounded in state law and procedure and is not

cognizable on federal habeas review.  <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Riley</u>

<u>v. Taylor</u>, 277 F.3d 261, 310 n. 8 (3d Cir. 2001).

Moore also contends that "the taking of Karen Mrs. Romanchik's [sic] purse

was clearly an afterthought done after the abandonment of any robbery, conspiracy

or other crime, and certainly after the original purpose of this episode had ended."

(Doc. 1, p. 46).  He concludes "[a]ccordingly, the verdict on these charges must be

vacated."  (<u>Id.</u>)  This argument is wholly conclusory and Moore is not entitled to

relief on this claim.

## 2.   Trial Court Error

Moore also claims that the trial court committed a number of errors, both

prior to and during the second trial.  (Doc. 1, Issue I, pp. 9-15, Issue II, pp. 15-22,

Issue VI, pp. 39-43, Issue X, pp. 49-52; Issue XI, pp. 53-59, Issue XIII, p. 69).

Moore argues that his constitutional rights were violated when the trial court failed to grant trial counsels' request to withdraw their representation and Moore's motion for removal of counsel based on irreconcilable differences. (Doc. 1, Issue I, pp. 9-15, Issue X, pp. 49-52).[6]

The Sixth Amendment to the United States Constitution provides that a criminal defendant is entitled to reasonably effective assistance of counsel. <u>See</u> U.S. CONST. amend. VI. This right to counsel in criminal prosecution does not guarantee meaningful rapport between attorney and his client. <u>Id.</u>; <u>Morris v. Slappy</u>, 461 U.S. 1 (1983). The right is not without limit and cannot be the justification for inordinate delay or manipulation of the appointment system. <u>United States v. McFadden</u>, 630 F.2d 963, 972 (3d Cir. 1980). There is ample precedent for the proposition that the need for an orderly and expeditious trial may require that a defendant proceed with counsel not of his preference. <u>See</u> <u>Wheat v. United States</u>, 486 U.S. 153, 164 (1988); <u>Morris</u>, 461 U.S. at 12 (1983); <u>Fischetti v.</u>

---

[6]This issue was first presented in the state court proceedings on direct appeal. It was raised again during the PCRA proceedings, at which time it was deemed previously litigated. Moore argues that his claim on direct appeal was a state law claim and his claim in the PCRA petition was a federal claim. Hence, the determination that the issue was previously litigated is erroneous. (Doc. 19, p. 18). Moore contends that the state courts failed to adjudicate his federal claim on the merits and a <i>de novo</i> hearing is necessary. The court disagrees. A state court need neither cite the decisions of the Supreme Court nor even be aware of its cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>see also</u> <u>Priester v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004). It is clear from a review of both the post-trial and direct appeal opinions that the state courts recognized that Moore's argument implicated a Constitutional claim and they adjudicated it accordingly. Consequently, no hearing is required.

Johnson, 384 F.3d 140, 145 (3d Cir. 2004); Fuller v. Diesslin, 868 F.2d 604, 607 (3d

Cir. 1989).

In considering Moore's motion, the trial court held as follows:

> We have before us defendant's motions for appointment of new
> counsel, and for a continuance to enable new counsel to properly
> prepare a defense.
>
> Defendant claims that his present counsel have ineffectively
> represented him.  We find no merit in this contention.  Our
> observation of the conduct of counsel throughout the prior trial in
> this case and throughout the proceedings leading up to the present
> trial satisfy us that every effort has been and is being made to
> properly represent this defendant.
>
> The Court is always mindful of the constitutional rights
> guaranteed to every defendant.  There is however, a point beyond
> which we can go in retrying a case.  It has become a prevalent
> practice in homicide cases for defendants to present one or more
> petitions for appointment of other counsel on the ground of
> ineffective representation.  If we were to grant the prayer of every
> such petition, no matter how groundless the petition may appear
> to us to be, our entire criminal trial system would become
> unmanageable.  It has been our observation that in the majority of
> cases, the contention of ineffective representation by counsel has
> totally lacked substance.  The case now before us does not depart
> from the norm.    It is our observation that counsel already
> previously appointed to represent this defendant have given their
> client a skilled and dedicated representation.  In view of the fact
> that present counsel have already tried this case from beginning
> to end, it is apparent to us that defendant's own interest can best
> be served by a continued representation by his present counsel in
> view of their extensive familiarity with all of the various issues
> presented at trial.

(Doc. 29-5, pp. 53-54).  Moore's motion for appointment of new counsel and for a

continuance was denied and he proceeded to trial represented by his court-

appointed attorneys.  (Doc. 29-5, p. 53).

23

In the post-trial opinion, the issue was disposed of as follows:

> Prior to the commencement of the second trial, the Court denied a motion by Defendant's trial counsel that they be allowed to withdraw as counsel for Defendant. The Court also denied a motion made by Defendant pro se that his trial counsel be removed. . . . We disagree with the contention of Defendant's present counsel that these rulings were erroneous. An indigent defendant does not have a right to counsel of his own choosing, and mere differences of opinion concerning strategy or the brevity of pre-trial communication does not compel the appointment of new counsel. The question whether counsel should be removed and replaced is essentially a matter within the sound discretion of the trial judge and there is no evidence here that discretion was in any way abused. Commonwealth v. Mancini, 340 Pa. Super. 592, 490 A.2d 1377 (1985); Commonwealth v. Chew, 338 Pa. Super. 472, 487 A.2d 1379 (1985). Whatever merit there may have been in the position of trial counsel seeking removal, there was reason for the trial judge to believe that, by waiting until some two weeks before trial to present his pro se motion, Defendant was simply trying to insure a delay in trial.

(Doc. 33, Ex. 10, p. 26).

During direct appeal, the Pennsylvania Supreme Court addressed the issue in the following manner:

> Whether a petition for change of court-appointed counsel should be granted is in the sound discretion of the trial court. Commonwealth v. Williams, 514 Pa. 62, 68, 522 A.2d 1058, 1061 (1987). Moreover, although the right to counsel is absolute, there is no absolute right to a particular counsel, Commonwealth v. Johnson, 428 Pa. 210, 236 A.2d 805 (1968), and appointed counsel shall not be removed except for substantial reasons. PA. R. CRIM. P. 316(c).

> The trial court determined that whatever merit there may have been in the position of counsel in seeking removal, there was reason for it to believe that, by waiting until some two weeks before trial to present his pro se motion, [Moore] was simply trying to insure a delay in trial. Furthermore, the trial court, while mindful of the constitutional rights guaranteed to [Moore],

24

> observed that counsel had provided skilled and dedicated representation throughout the prior trial and the proceedings leading up to the present trial.  It determined that [Moore's] contention of ineffective representation by counsel totally lacked substance, and concluded that in view of the fact that present counsel had already tried this case from beginning to end, [Moore's] own interest could best be served by continued representation by such counsel in view of their extensive familiarity with all of the various issues presented at trial.

Moore, 633 A.2d at 1125.  It concluded that the trial court did not abuse its discretion in refusing to remove appointed counsel, observing that the cases relied upon by Moore, Commonwealth v. Tyler, 468 Pa. 193, 360 A.2d 617 (1976), and Commonwealth v. Nicolella, 307 Pa. Super. 96, 452 A. 2d 1055 (1982), did not alter this conclusion because Moore "clearly received zealous representation throughout the proceedings, and. . . failed to allege facts to reasonably support this claim  . . . ." Id.

Moore argues that the trial court did not conduct any meaningful inquiry into the allegations by both Moore and his trial counsel that they had irreconcilable conflicts.  He posits that "the absence of such an inquiry [constitutes] an unreasonable application of Wood v. Georgia, 450 U.S. at 271 ("the *possibility* of a conflict of interest was sufficiently apparent at the time of [trial] to impose upon the court a duty to inquire further), and Cuyler v. Sullivan, 446 U.S. at 347 (requiring reversal where trial court failed to make inquiry when court "knows or reasonably should know that a particular conflict exists)." (Doc. 19, pp. 18-19).  These cases are distinguishable from the case *sub judice* in that they involved conflicts of interest arising from a single attorney representing multiple criminal defendants.  In

25

<u>Woods</u>, a single attorney represented three criminal defendants. To further complicate the matter, the attorney was hired by the defendants' employer, an interested third party. <u>Woods</u>, 450 U.S. 261, 271 (1981). In <u>Cuyler</u>, a single attorney also represented three criminal defendants. <u>Cuyler</u>, 446 U.S. 335, 347 (1980). The court observed that a conflict inheres in almost every case where there is multiple representation, and a defendant who objects to such representation must be given the opportunity to demonstrate that the potential conflict impairs his right to a fair trial. <u>Id.</u> at 348. Clearly, these cases do not compel the conclusion that the direct appeal ruling was an unreasonable application of federal law.

The United States Court of Appeals for the Third Circuit has also recognized a duty of inquiry when a defendant, who no longer wants to proceed with present counsel, seeks to proceed *pro se*. The Court stated as follows:

> This court observed in <u>Welty</u> that when a defendant requests substitution of counsel on the eve of trial, "the district court must engage in at least some inquiry as to the reasons for the defendant's dissatisfaction with his existing attorney." <u>United States v. Welty</u>, 674 F.2d at 187. Certainly "there is no absolute right to a particular counsel," <u>United States ex rel. Carey v. Rundle</u>, 409 F.2d 1210, 1215 (3d Cir.1969), <u>cert. denied</u>, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1969), and the right to choose a particular lawyer "must be balanced against the requirements of the fair and proper administration of justice." <u>United States v. Rankin</u>, 779 F.2d 956, 958 (3d Cir.1986). Nevertheless, the trial court still has the "duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known." <u>Brown v. United States</u>, 264 F.2d 363, 369 (D.C.Cir.) (*en banc*) (Burger, J., concurring in part), <u>cert. denied</u>, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

<u>McMahon v. Fulcomer</u>  821 F.2d 934, 942 (3d Cir. 1987).  However, in both

<u>McMahon</u> and <u>Welty</u>, unlike the case before us, the trial court allowed the

defendant to discharge his attorney, but did not permit him to seek new counsel.

As a result, the defendant was forced to represent himself *pro se*.

   The decision to proceed *pro se* requires the trial court to secure a voluntary

and intelligent waiver of a defendant's Sixth Amendment right to counsel.

<u>McMahon</u>, 821 F.2d at 942.  This standard is inapplicable to the case *sub judice* in

that Moore did not proceed to trial without representation.  Rather, he was not

allowed to discharge his attorney and, therefore, proceeded with his court-

appointed attorneys.  The standards relied upon by the state courts were in accord

with applicable federal law.  Moore has failed to convince the undersigned that the

state court's decision was erroneous.  Nor has he established that the state court

decision was based on an unreasonable determination of the facts in light of the

evidence presented in state court such that a rational jurist could not reach the

same finding based upon the evidence of record.

   Moore next raises the issue of whether the trial court's decision to deny

Moore's motion to suppress a pretrial photographic identification by Mrs.

Romanchick was erroneous because it cast a fatal tint upon the trial.  (Doc. 1, Issue

VI pp. 39-43).  On direct appeal, the Pennsylvania Supreme Court described the

photo arrays as set forth below:

> Prior to the suppression hearing Mrs. Romanchick had properly
> selected the photos of [Moore] from a photo array and also
> identified him at the preliminary hearing.  Nevertheless, while

> Mrs. Romanchick was once again able to specifically identify [Moore] as present at the suppression hearing, she also selected one photograph of [Moore] and a photograph of another man when [Moore's] counsel attempted to recreate the photo array.

Moore, 633 A.2d at 1126.  After recognizing that the Commonwealth bears the

burden of establishing that any identification testimony is free from taint of initial

illegality, the Pennsylvania Supreme Court stated as follows:

> In ruling on whether the Commonwealth has met its burden, the trial court must determine whether there has been suggestiveness employed during the process of photographic identification which creates a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972).  In making this determination, the court should normally consider the manner in which the identification procedure was conducted, the witness' prior opportunity to observe, the existence of any discrepancies between the witness' description and the defendant's appearance, any previous identification, any prior misidentification, any prior failure of the witness to identity the defendant, and the lapse of time between the incident and the court identification.  Commonwealth v. Fowler, 466 Pa. 198, 352 A.2d 17 (1976); United States v. Higgins, 458 F.2d 461 (3d Cir. 1972).

Id. at 1125-26.  The supreme court carefully considered each of Moore's challenges

to the photo arrays.  Based upon the record evidence supporting correct

identification, the court concluded that there was "not a very substantial likelihood

of irreparable misidentification by Mrs. Romanchick," observing:

> Mrs. Romanchick, a victim, was in a small well lit room, a few feet from [Moore] with her eyes trained on him as he held a gun on her for an extended period of time.  Under such circumstances, she had an extraordinarily good opportunity to observe [Moore].  It is not significant that she was unable to remember just how many men there were in the room during the ordeal, or fix [Moore's] height or weight with a high degree of specificity.  Nor are we

28

> persuaded that the methods employed in connection with the initial photo array were suggestive.  No information is offered concerning the photographs of the other men, nor is it alleged that the police officer directed Mrs. Romanchick to select the photographs which she did in fact choose.  Even if we were to conclude that the photographic identification was unreasonably suggestive, the other factors present in this case convince us that there was little chance of misidentification of [Moore].

Id. at 1126.

Moore concedes that the state court relied on the appropriate federal law. (Doc. 1, pp. 40-41).  In a tenuous attempt to establish that the state court's decision was an unreasonable determination of the facts in light of the evidence presented, Moore argues, as he did in state court, that "[t]he photographic identification in this case contained several errors and suggestiveness involving several of the seven factors [outlined above]."  (Doc. 1, p. 41).  However, Moore simply reiterates the same arguments raised in state court and fails to come forth with a single reason why the state court's decision constituted an unreasonable determination of the facts in light of the evidence presented.

Moore next claims that the trial court failed to combat the pervasive, inflammatory publicity to which he was exposed.  (Doc. 1, Issue II, pp. 15-22, Issue XI, 53-59, XIII, pp. 63-73).  Moore contends that he was prejudiced by his appearance before the jury—with visible head and facial injuries—in prison clothing and by the publicity surrounding his trial.  He argues that the trial court should have granted defense counsel's motion for mistrial, rather than giving a cautionary instruction.  (Id.)

29

After the jury was selected, the trial court instructed them as set forth below:

> During the trial and during you recesses you must not talk to anyone including your fellow jurors about the case, or listen to others talk about the case. There are some persons with whom you must avoid even casual conversations, namely those persons who have something to do with the case. Those persons are the defendant, counsel for both sides and the witnesses and the court officers.
>
> Do not read newspapers or other stories about the trial or about the defendants. You should also avoid radio or television broadcasts which might refer to the trial or the defendant.
>
> You, of course, are forbidden from visiting the scene of the alleged crimes or make any investigation of your own or conduct an experiment of any kind. Your only information about this case should come to you while you are all present together acting as a jury in the presence of the court, the attorneys and the defendant here in the courtroom.

(Doc. 33, N.T. Trial #2, pp. 205-06). After the passage of a few days, trial counsel

moved for a mistrial based on the following:

> Your Honor, at this time counsel for the defense would move for a mistrial. . . The position of counsel on the motion is extensive publicity in two area newspapers, the Times Leader and the Citizens' Voice, concerning a recent riot at the Luzerne County Prison and several articles in the papers from September 13, 14 and 15 have indicated Tyrone Moore, who is the criminal defendant in this case was involved and further that the riot was directly linked to an escape plan to free Tyrone Moor from prison officials. News of this appeared not only in the local newspaprs but additionally there's been radio broadcasts on WARM, WILK and WGBI, and we feel that the jury would be tainted and prejudicial. We would move for a mistrial. In the alternative, we would ask for individual voir dire of the jurors to determine the extent of their exposure and if the motion is denied we would ask the Court to conduct the voir dire.

(Doc. 33, N.T. Trial #2, pp. 414-15).  The Commonwealth responded by noting that the trial court had repeatedly instructed the jury of its duty to avoid any publicity in the matter and pointed out that during individual voir dire, the jurors indicated an ability to divorce themselves from any publicity that was heard and that there was no mention of the incident at issue since the inception of the trial itself.  (Id. at 415). A cautionary instruction was suggested.  (Id.)  The trial court opted to give the following curative instruction over the objection of trial counsel:

> Ladies and gentlemen of the jury, for the past three days, including today, you could not help but notice the fact that the defendant, Tyrone Moore, has had his head, in part, covered with a bandage. You may or you may not have heard or read about reports that Mr. Moore was allegedly involved in, and injured, in a fracas which allegedly occurred between some inmates of Luzerne County Prison, including Mr. Moore, and the guards there, as well as some state police and other security agencies.
>
> You are now cautioned that in your deliberations as to your verdicts in this case you are not to consider whatsoever anything which you may have heard or read or seen on television regarding that altercation as same pertains to the defendant, Mr. Moore.  At the appropriate time your verdicts shall be and only can be based on what you have heard and seen during the course of this trial as same pertains to the charges herein against the defendant, Mr. Moore.
>
> Any outside matters beyond that cannot and must not be considered by you in arriving at your verdicts in this case.  So you are cautioned to pay no attention to the fact that Mr. Moore's head is bandaged or to any reports involving any altercation which he may have been involved in the prison.  That has nothing to do with this case.
>
> Your verdicts, again, will be based solely on what is presented from the witness stand during the course of this trial.

Moore, 633 A.2d at 1126.  The Supreme Court rejected Moore's argument finding that "[i]t is a matter within the sound discretion of the trial court to determine whether this cautionary instruction was necessary in light of the publicity surrounding the prison riot coupled with [Moore's] appearance at trial. Commonwealth v. Jermyn, 516 Pa. 460, 533 A.2d 74.  (1987)."  Moore, 633 A.2d at 1127.  Although Moore argues that the court committed error in resolving the issues of his appearance and the publicity surrounding him by giving the above instruction, he fails to establish that the Supreme Court's determination was unreasonable or contrary to prevailing federal law or that the decision to give a curative instruction was unreasonable in light of the facts presented at the trial.

Moore also argues that the curative instruction, coupled with his appearance at trial, impermissibly "cloaked him as a prisoner" in violation of Estelle v. Williams, 425 U.S. 501 (1976).  In Estelle, the United States Supreme Court was presented with the potential effects of presenting an accused before a jury in "prison attire."  After a thorough discussion of the Estelle standard, the court held as follows:

> While we recognize that the curative instruction by the trial court in the *matter sub judice* together with [Moore's] appearance at trial had the effect of informing the jury that [Moore] was a prisoner and may have been injured while incarcerated, we do not conclude that this factor rises to the level of error proscribed in Estelle. There is nothing in the record to indicate that [Moore] was compelled to wear prison attire, nor that the jury was aware that [Moore] was clothed in prison attire.  Furthermore, [Moore] fails to establish that the clothing was marked or identified as prison attire.

Moore, 633 A.2d at 1127.

The court concludes that applicable and appropriate federal law was relied upon by the state court.  The Estelle decision was thoughtfully applied and Moore fails to establish that the state court's decision resulted from an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[7]

    3.    Ineffective Assistance of Counsel

Moore also raises claims of ineffective assistance of trial and appellate counsel.

    *a.*    *Trial Counsel*

As noted in the Motions for Mistrial and Double Jeopardy Issues section, *supra*, the ineffective assistance of counsel standard relied upon by the state courts was clearly in line with prevailing federal law.  Moore, 633 A.2d at 1131. Nevertheless, Moore argues that his trial counsel failed to obtain a copy of the tape recorded statement of his accomplice (and Commonwealth witness), Ricardo Scott.

---

[7]Moore's present counsel states that he "has been able to obtain photographs of Petitioner from news medial sources, showing Petitioner and his wounds, and clearly identifiable prison clothes spatter with what appeared to be blood stains. These photos show that Petitioner wore these same clothes throughout trial, with sutures of his lip and head also clearly visible."  (Doc. 1, p. 20).  However, as noted in the "Standards of Review" section, *supra*, when a petitioner seeks to establish that the state court's determination is an unreasonable application of the facts,  the district court essentially steps into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction.  The evidence to which counsel refers is not part of the state record and cannot be considered.

He alleges that this recorded statement conflicted with Scott's trial testimony and would have raised reasonable doubt as to the degree of Moore's guilt. (Doc. 1, Issue III (A), pp. 22-28). Alternatively, he argues that if counsel had obtained the statement, he was ineffective for failing to use it. (Doc. 1, Issue XIV, p. 73).

Moore details the discrepancies between Scott's trial testimony and the transcribed statement. He contends that "trial counsel did not have this tool available to them. They failed to obtain a copy of either the direct tape or the transcript or the statement. They had asked for it by way of discovery request, but they never bothered to follow up on this request, even though the Commonwealth acknowledged the existence of a taped statement." (Doc. 1, p. 26).

In considering this issue on direct appeal, the Supreme Court primarily relied on the following reasoning of the trial court:

> We find the arguments of Defendant's present counsel in reference to prior counsels' possible use of the statement given by Scott to the FBI Agent to be highly ingenious but not sufficiently persuasive to incline us to grant a new trial. For one thing, we have only the bare assertion that trial counsel were unaware of the content of the statement made by Scott to the FBI Agent. We find nothing in the record which substantiates this assertion, and it is the contention of the Commonwealth, with which we agree, that a fair reading of the cross-examination of Scott tends to indicate that Defendant's trial counsel were aware of the contents of the prior statement.
>
> If trial counsel had elected to use a portion of the prior statement for the purpose of impeachment, the Commonwealth would have had the right to have the portion used placed in context, and the context would have tended largely to reiterate the statements made by Scott at trial, thus bolstering his credibility.

Wholly apart from the dangers inherent in the use of the prior statement for the purpose of impeachment, we must seriously question the contention of Defendant's present counsel that there is an inherent conflict between Scott's prior statement and his testimony at trial.  On both occasions Scott asserted that he was involved in binding Mrs. Nowakowski just prior to the shooting and that at that point in time he was not watching either Defendant or Nicholas Romanchick. The typewritten transcript of the prior statement is to the effect that Romanchick had jumped up and was trying to wrestle Defendant just before he was shot, and we have no explanation whatever as to why the word "rush" was substituted for the word "wrestle" in the typewritten transcript.  Even a most cursory examination of the transcript tends strongly to suggest that this revision was made by some person other than the person who had made the original longhand revisions of the preceding portions of the transcript and that it was in all probability made at another point in time.  There is nothing to indicate that Scott did anything more than glance at Romanchick in the instant just prior to the shot being fired; and it is therefore apparent that, despite his statement to the FBI Agent that Romanchick was shot "through the front", it is entirely possible that Romanchick was shot through the back as he was attempting to wrestle with Defendant. It is clear from Scott's prior statement that he was of the opinion that Romanchick was shot through the front simply "because there wasn't nobody in back of him", whereas it is entirely possible that Romanchick was shot in the back while attempting to wrestle with Defendant, even if Defendant was at that time in front of Romanchick.  When men wrestle they tend to throw their arms around one another, and such a posture clearly could place one or both of Defendant's hands behind Romanchick even if Romanchick were facing Defendant at the time.

In the final analysis, we are of the opinion that the emphasis placed by Defendant's present counsel on the need for perfect clarity as to the manner in which the fatal wound is inflicted tends to remind one of Don Quixote tilting at a windmill. The defense offered by this Defendant at trial was not that it was Scott rather than he who had fired the fatal shot. The defense was that he had been mistakenly identified as one of the parties present at Dr. Lopotofsky's office on the night of the fatal shooting, and there is nothing to suggest that any of the alleged inconsistencies in the statements made by Scott prior to and at trial would have in any

35

way bolstered such a defense.  A Defendant who asserts that there has been ineffective assistance of counsel at trial must prove not only that counsel made an error in judgment, but also that that error prejudiced the outcome of the case.  Commonwealth v. Durah-El, 344 Pa.Super. 511, 496 A.2d 1222 (1985).  The burden of proving ineffectiveness of trial counsel rests upon Defendant, since counsel's stewardship at trial is presumptively effective.  Commonwealth v. McNeil, 506 Pa. 607, 487 A.2d 802 (1985).  One cannot judge the effectiveness of trial counsel in hindsight.  Such a judgment must be based on the circumstances at trial, and must be looked at from the perspective of trial counsel.  Commonwealth v. Garrity, 509 Pa. 46, 500 A.2d 1106 (1985).  We find nothing in this record sufficient to convince us that the failure of trial counsel to use Scott's prior statement for purposes of impeachment, whether to point out alleged inconsistencies as to the manner in which the shooting occurred or whether to impugn Scott's accuracy on the ground that he was in a "reefer haze", constituted ineffective representation in light of the circumstances then and there existing.  In addition, we simply refuse to accept the validity of the proposition that a man who enters another man's office or dwelling, armed with a revolver, and with the intent to commit armed robbery, and who then shoots and kills at point blank range a man who attempts to prevent the commission of the robbery, can be heard to seek a reduction of the magnitude of his offense from first degree murder to second or third degree murder or manslaughter on the theory that he lacked a specific intent to kill.  A jury could just as readily infer just that he had from the very inception of the plan a specific intent to kill anyone who attempted to stand in his way and prevent the commission of the robbery.

Moore, 633 A.2d at 1132-34, citing the Tr.Ct.Op. pp. 4-8.  The Supreme Court then

concluded that:

Given the analysis of the trial court on this issue, and our independent review of the record, which reveals nothing sufficient to convince us that the failure of trial counsel to specifically use Scott's prior statement for purposes of impeachment constitutes ineffective representation, this claim must fail.  Moreover, given the circumstances then and there existing and the nature of [Moore's] present claim, we find it unnecessary to grant [Moore's] request that we remand this matter for a hearing on whether trial

counsel actually obtained a copy of Scott's taped statement or were
sufficiently aware of the contents thereof.

Id. at 1134.  It was further stated as follows:

> Aside from the dangers associated with the use of the statement,
> and the evidence that counsel were aware of the contents of the
> statement (trial counsel presented a discovery request for the
> statement), the inconsistencies are minor and are not so inherently
> contradictory as to negate the thrust of Scott's testimony that
> [Moore] had pulled the trigger. Throughout the trial [Moore]
> contended that he was not present at the scene, and it was not
> Scott alone who placed [Moore] there while Scott taped those
> unfortunate enough to be present in the animal hospital on that
> night.  Even if we remanded for the requested hearing and it was
> determined that counsel were unaware of the contents of the tape,
> which we believe to be very unlikely based upon the record,
> [Moore] simply cannot assert the requisite prejudice therefrom.
> We find it difficult to envision how such evidence could have
> substantiated [Moore's] alibi defense, or sufficiently supported a
> finding of reduced intent, or mitigated [Moore's] involvement in
> this homicide.

Id.  Once again, the state court thoroughly and properly reviewed the facts of record

and applied appropriate legal standards.  In sum, Moore fails to establish that the

state court determination was based on an unreasonable determination of the facts

in light of the evidence presented.

Moore alleges a laundry list of other ineffectiveness claims.  (Doc. 1, Issue III

(C), pp. 28-32, Issue XIII(2), pp. 63-73).  On direct appeal, he  assembled "a

hodgepodge of unsupported claims which relate[d] to counsels' failure to: secure

unnamed witnesses; request transcription of the preliminary hearing; secure

statements of unnamed witnesses; investigate the alibi defense; consult with

appellant regarding his defense; allow the jury to return a verdict in the first trial

37

because of a motion for mistrial; seek change of venue based on pretrial publicity; investigate the background of Scott; and conduct adequate voir dire." <u>Moore</u>, 633 A.2d at 1135.  The court thoroughly reviewed these claims under the ineffectiveness standard and concluded that Moore's claims possessed no arguable merit and could not support a finding of the requisite prejudice.  In fact, the court found that "the record reveals that defense counsel made substantial efforts on [Moore's] behalf in this case, and they cannot be faulted for reasonable trial strategy given the circumstances present, which included strong identification evidence, substantial evidence of numerous aggravating circumstances and extremely limited evidence in mitigation." <u>Id.</u>  Further, "the cursory nature of these claims, and the cursory nature of [Moore's] argument serve only to strengthen our determination, and that of the trial court, that these claims possess no arguable merit and cannot support a finding of the requisite prejudice." <u>Id.</u>  Moore fails to establish that this decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Quite simply, he provides no basis for this court to disturb the state court's findings.

### b.  *Appellate Counsel*

The remaining claims are "layered ineffectiveness" claims raised during the PCRA proceedings in the form of appellate counsels' failure to raise trial counsels' ineffectiveness.  In considering the layered claims, the state supreme court correctly opined:  "Moore may still obtain relief for trial counsels' ineffectiveness if he can show appellate counsel was ineffective for failing to pursue the claims. <u>See</u>

Commonwealth v. Rush, 576 Pa. 3, 838 A.2d 651, 656 (2003) (citing Commonwealth v.

McGill, 574 Pa. 574, 832 A.2d 1014, 1022 (2003) (when court is faced with "layered"

ineffectiveness claim, only viable ineffectiveness claim is that related to most recent

counsel, appellate counsel))." Moore, 860 A.2d at 93.  The court then set forth the

following standards applicable to layered ineffective assistance of counsel claims:

> [A] petitioner must " present argument on, i.e. develop each prong
> of the [Commonwealth v.] Pierce [, 515 Pa. 153, 527 A.2d 973 (1987)]
> test" as to appellate counsel's deficient representation
>
> The "Pierce test" requires Moore to prove, with respect to
> appellate counsel's performance, that: (1) the underlying claim of
> trial counsel's ineffectiveness has arguable merit; (2) appellate
> counsel had no reasonable basis for failing to pursue the claim;
> and (3) but for appellate counsel's ineffectiveness, the result on
> direct appeal would have differed.  See McGill, at 1022-23.  This
> "performance and prejudice" test was first enunciated in
> Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
> 674 (1984), and was recognized in Commonwealth v. Pierce, 515 Pa.
> 153, 527 A.2d 973 (1987), as the proper test under the Pennsylvania
> Constitution.  Failure to address any prong of the test will defeat
> an ineffectiveness claim. [Commonwealth v.] Basemore, [744 A.2d
> 717] at 738 n. 23 (2000) (citing [Commonwealth v.] Rollins, 738 A.2d
> 435, at 441 (1999)) (ordinarily, post conviction claim of ineffective
> assistance of counsel may be denied by showing petitioner's
> evidence fails to meet single one of three prongs for claim).

Moore, 860 A.2d at 94.

Moore first argues that trial counsels' failure to object to the prosecutor's

remarks regarding the various degrees of murder constituted ineffective assistance

of counsel.  (Doc. 1, Issue XII, pp. 60-63).[8]  At no point does he contend that the

_____

[8]Although this issue is couched in terms of improper conduct on the part of
the prosecutor, Moore characterized this claim during the PCRA proceedings as
trial counsels' ineffectiveness for failing to object and seek proper instructions.

standards utilized were contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the United States Supreme Court.

Rather, Moore contends that the decision was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceedings. Specifically, he argues that "[i]t is inconceivable that a rational lawyer

would want the jury to decide the case under a lesser burden on the

Commonwealth than proof beyond a reasonable doubt on every element of the

offense." (Doc. 1, p. 62). The supreme court reviewed the prosecutor's remarks and

concluded that he was simply explaining to the jury how they could find Moore

guilty of the varying degrees of murder. Moore, 860 A.2d at 95. Further, the

prosecutor went to great lengths to inform the jury that it was not his function to

give definitions of the law and crimes involved. He emphasized that "the sole

person that is responsible and the sole person that will give you the accurate,

complete and very extensive statement of the law to be used in your deliberations is

Judge Podcasy. So you be governed by the principles of law that he gives you. I am

simply using some of the principles to describe my argument to you." (Doc. 32,

Appendix II, N.T. Trial # 2, pp. 645-46). The state appellate court observed that

"[t]he trial court instructed the jury concerning all levels of criminal homicide and

clearly stated that to convict Moore of first degree murder, they had to find he had

killed the victim and that he had done so with specific intent." Moore, 860 A.2d at

95 (citing N.T. Trial #2, 9/12/1983 at 661-67). "Accordingly, trial counsel was not

ineffective for failing to object to the prosecutor's statement. As this claim is

meritless, Moore's claim of appellate counsel's ineffectiveness is necessarily

defeated as well.  <u>McGill</u>, at 1023."  <u>Id.</u>  Based on this conclusion, the court found it

unnecessary to remand to review the remaining two prongs of <u>Pierce</u>.  This was not

error.  The state court's decision was clearly based on an reasonable determination

of the facts in light of the evidence presented in the state court proceeding.

Moore also alleges that counsel were ineffective for failing to raise the issue

that the Commonwealth withheld exculpatory evidence in violation of <u>Brady v.

Maryland</u>, 373 U.S. 83 (1963).  He contends that "the Commonwealth presented

testimony that it knew or should have known was false, failed to disclose payments

and promises to witnesses, and intimidated potential defense witnesses."  (Doc. 1,

Issue XIV, pp. 73-86).  The identical arguments made in the present petition

concerning witnesses Juanita and Sarah Lancaster, Ricardo Scott, Nancy Smith

and Willie Rush, were presented, almost verbatim, to the state courts.  (Compare

Doc. 1, Petition for Writ of Habeas Corpus, pp. 75-86 and Doc. 29-4, Amended

Petition for Habeas Corpus pursuant to the Post Conviction Relief Act, pp. 7-18).

The state supreme court denied the claim for the following reasons:

> While other evidence may have been helpful to Moore's case, in the end, none of this evidence as alleged tends to prove Moore's innocence of the crime; Moore only attempts to smear the Commonwealth's case by these averments of misconduct. The PCRA court rejected these claims without a hearing, and we perceive no abuse of discretion in its doing so.  Accordingly, neither trial nor appellate counsel were ineffective for failing to raise this issue, <u>McGill</u>, at 1023, and remand for further development of it is unnecessary. <u>Rush</u>, at 657-58; <u>McGill</u>, at 1025.

<u>Moore</u>, 860 A.2d at 95.  Moore has presented no persuasive authority or record citations to establish that the above determination of the facts was unreasonable in light of the evidence presented.

Moore next raises a number of issues concerning *voir dire*.  (Doc. 1, Issue XV, pp. 86-90).  Specifically, he claims trial counsel was ineffective for failing to challenge a trial court ruling with respect to a prospective juror, failing to life qualify the jury, not attempting to rehabilitate a juror, and accepting biased jurors. The state supreme court determined that "[a]s none of Moore's claims regarding trial counsel's ineffective assistance in connection with jury selection entitle him to relief, his claims of appellate counsel's ineffectiveness fail, <u>see</u> <u>McGill</u>, at 1023, and there is no need to remand.  <u>Rush</u>, at 657-58; <u>McGill</u>, at 1025."  <u>Id.</u> at 96.

He argues that counsel were ineffective in failing to question any jurors to determine whether their death penalty view would prevent or substantially impair them from imposing a life sentence.  It is his contention that he had a "right to conduct voir dire to exclude for cause jurors who could not return a life sentence or give independent effect to relevant mitigating evidence or fairly consider a life sentence."  (Doc. 1, p. 88) (relying on <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968) and <u>Adams v. Texas</u>, 448 U.S. 38 (1980)).   However, the applicable United States Supreme Court precedent holds that in order to prevent the service of a juror incapable of returning a verdict of life imprisonment, a defendant is permitted to pose "life-qualification" questions during voir dire pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  <u>Morgan v.</u>

42

Illinois, 504 U.S. 719. (1992).  Subsequently, the Pennsylvania Supreme Court

concluded that "'although such questions are *permissible*, they are *not required* and

counsel is not ineffective for failing to pose them.' Commonwealth v. Hardcastle,

549 Pa. 450, 701 A.2d 541, 543 (1997) (citing Commonwealth v. Blount, 538 Pa. 156,

647 A.2d 199 (1994))." Moore, 860 A.2d at 96 (emphasis added).  Although Moore is

unhappy that counsel failed to "life-qualify" the jury, there is no support for the

conclusion that counsel's omission jeopardized the selection of a fair and impartial

jury.  This is simply a matter of trial strategy and counsel's stewardship is entitled

to a presumption of effectiveness.  Commonwealth v. McNeil, 506 Pa. 607, 487 A.2d

802 (1985).  The record is devoid of any evidence that counsel's decision to forego

"life-qualifying" the jury was unreasonable.

    The same is true with respect to his claim that trial counsel were ineffective

for not attempting to rehabilitate a juror, Ms. Benjamin, who the Commonwealth

challenged for cause because she stated she could not impose the death penalty.

Moore takes the position that "[w]hen the prosecution makes a Witherspoon

challenge, it is incumbent on defense counsel to attempt to rehabilitate the juror to

show that the juror could in fact follow the court's instructions and the law.

Counsel, however, made no attempt whatsoever to rehabilitate Ms. Benjamin. . . .

Counsel's failure to try to do so was ineffective and prejudicial. " (Doc. 1, Issue XV,

p. 89).  In support of his argument he cites to the case of Szuchon v. Lehman, 273

F.3d 299 (3d Cir. 2001).

Contrary to Moore's assertion, the <u>Szuchon</u> case actually demonstrates that the *voir dire* conducted with respect to Ms. Benjamin was proper.  Specifically, the applicable precedent holds that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" <u>Szuchon</u>, 273 F.3d at 327 (citing <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (quoting <u>Adams v. Texas</u>, 448 U.S. 38, 45 (1980))).  The exchange between Ms. Benjamin and the prosecutor is as follows:

> Q.   In the event that the jury comes back, Miss Benjamin, with a verdict of murder in the first degree, I, as the Commonwealth, am going to ask you to return a sentence of death.  Do you have any religious, moral or conscientious belief that would prevent you absolutely from imposing the death penalty regardless of the circumstances?
>
> A.   Yes.  I couldn't.
>
> Q.   As a juror you would be obligated to uphold the law, to listen to the evidence and decide the case on the law.  Are you telling me that no matter what evidence you hear or no matter what the Judge tells you the law is, and no matter what the facts are, whatever, that under no circumstances could you impose the death penalty?
>
> A.   That's what I'm saying, I couldn't.
>
> Mr. Albert: Move for cause, your Honor.
>
> The Court: All right.  Don't discuss this with any of the other jurors.  You are excused.

44

(N.T. *Voir Dire*, p. 158).  It is clear from the above exchange that this juror's views would prevent or substantially impair the performance of her duties as a juror in accordance with any instructions given or the oath taken.

This *voir dire* claim was rejected by the state court due to Moore's failure to satisfy the prejudice prong that, but for counsel's failure to rehabilitate the juror, the result at trial would have been different.  Moore, 860 A2d 96. This court agrees. There is no evidence of prejudice and Moore fails to convince us that the state court analysis and conclusion should be disturbed.

Moore's final *voir dire* issue is that trial counsel should not have accepted certain jurors whose answers revealed potential bias.  (Doc. 1, Issue XV, p. 89).  The trial court addressed the issue as follows:

> [H]e alleges the racial bias of one juror, and points to the fact that another juror had a family member in law enforcement and a third juror's family member had been the victim of a crime. However, the one juror's reference to the fact he had a "colored" gentleman for a roommate does not amount to racial bias; the juror offered this fact as support for his statement that the races of the victim and Moore would have no effect on him. N.T. Voir Dire, 9/12/83, at 83.  The juror whose brother was a police officer stated that fact would not influence her decision, id., at 111, and the juror whose brother had been a crime victim said she did not think it would prevent her from being fair and impartial. Id., at 140. Trial counsel cannot be said to be ineffective for accepting these jurors.

Moore, 860 A2d at 96.  Because trial counsel were deemed to be effective, his claims of appellate counsel's ineffectiveness failed.  Id.  In the instant petition, Moore simply argues, in conclusory fashion that "[c]ounsel was ineffective for failing to explore further these potential biases and for failing to use peremptory challenges

to exclude these jurors." (Doc. 1, p. 90). He provides no argument that would demonstrate that this decision was based on an unreasonable determination of the facts. Hence, these claims are unavailing.

Moore also contends that appellate counsel was ineffective for failing to raise various errors and omissions by trial counsel, including the failure to impeach two witnesses with prior inconsistent statements, failing to investigate the Commonwealth's alleged coercion of these witnesses and intimidation of another witness, failing to call a co-conspirator as a witness, failing to object to testimony which inaccurately suggested a certain witness had identified Moore, conceding the strength of the prosecution's identification evidence, and failing to impeach a witness with *crimen falsi* convictions and his plea agreement incentives. (Doc. 1, Issue XVI, pp. 90-101).

During the PCRA proceedings, the supreme court found that the failure to impeach witnesses and to investigate the alleged intimidation and coercion of witnesses were retooled versions of Moore's unsuccessful <u>Brady</u> claims. Therefore, no further discussion was warranted. <u>Moore</u>, 860 A.2d at 96. Remaining to be considered were Moore's claims that trial counsel failed to object to improper identification testimony, improperly conceded the strength of the identification evidence, and failed to call Moore's co-conspirator. The court found that these "allegations of trial counsel's error do not rise to the level of prejudice requiring reversal of Moores conviction; he fails to demonstrate the result at trial would have differed but for counsel's performance." <u>Id.</u>

46

Moore specifically contends that counsels' conduct in failing to object to the trial testimony of Ms. Nowakowski was prejudicial.  He argues that Nowakowski's testimony erroneously conveyed to the jury that she saw Moore next to Mr. Romanchick immediately prior to Mr. Romanchick being shot.  He further contends that trial counsel were ineffective when they conceded the strength of the prosecution's identification case during closing arguments.  (Doc. 1, pp. 97-98).  Ms. Nowakowski's testimony—that Mr. Romanchick was right next to Moore when he was shot—dispels these arguments.  Ms. Nowakowski testified that there were two individuals involved in the criminal activity and that both of Mr. Scott's hands were clearly visible to her when Mr. Romanchick was shot.  Moore argues that contrary to defense counsel's concessionary statement in closing that "[t]he Commonwealth witnesses got on the stand, several of them identified Tyrone Moore as the man - as the man who fired the gun, who was at the scene of the crime on October 1st. . . " (Doc. 33, N.T. Trial #2, p. 613), only his accomplice, Ricardo Scott, identified him as the shooter.  However, Moore's characterization of the scope of defense counsel's concessions during his closing argument is inaccurate.  Defense counsel argued that "the Commonwealth has brought forth witnesses and their witnesses testified that Mr. Moore was there and that *one of their witnesses testified that Mr. Moore was the one that pulled the trigger*.  And you have to determine whether you are going to believe this and you are the ones who determine the credibility."  (Id. at p. 615) (emphasis added).  In light of the foregoing, the record falls substantially short of

establishing that the trial court's conclusion was unreasonable in light of the facts presented.

Lastly, Moore takes issue with the fact that counsel did not call co-defendant Anthony Brad Jones.  He contends that "[s]ince the sole co-conspirator testifying against Moore had received a deal from the Commonwealth, it is inconceivable why defense counsel would fail to call Brad Jones, who would have derived no benefit from testifying in Moore's favor and might have been able to secure a deal himself if he had been willing to implicate Moore."  (Doc. 1, p. 96).  This argument is conclusory and Moore provides no reason to disturb the state court's determination that he failed to demonstrate that had counsel called this witness, the result at trial would have differed.

4.    <u>Commonwealth Error</u>

Moore argues that the Commonwealth failed to disclose the contents of a taped FBI statement of Scott, and other information concerning him in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), as refined in <u>United States v. Agurs</u>, 427 U.S. 97 (1976).  (Doc. 1, Issue IV, pp. 32-33, Issue XIV, pp. 73-86).  A federal due process claim based on the prosecution's withholding of or failure to produce evidence is known as a " <u>Brady</u> claim" originating in the United States Supreme Court holding in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  <u>Brady</u> held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S.

at 87. The Court identified the three elements of a <u>Brady</u> claim in <u>Strickler v.</u>

<u>Greene</u>, 527 U.S. 263, 281-82 (1999).  First, "the evidence at issue must be favorable

to the accused, either because it is exculpatory, or because it is impeaching." <u>Id.</u>

Second, "the evidence must have been suppressed by the State, either willfully or

inadvertently." <u>Id.</u>  Third, "prejudice must have ensued." <u>Id.</u>  Every failure to

disclose favorable evidence does not rise to the level of a constitutional violation.

<u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995). The failure to disclose constitutes a

due process violation "only if the government's evidentiary suppression

undermines confidence in the outcome of the trial." <u>Id.</u> at 434.  The failure to

disclose evidence is not a <u>Brady</u> violation "unless the nondisclosure was so serious

that there is a reasonable probability that the suppressed evidence would have

produced a different verdict." <u>Strickler</u>, 527 U.S. at 281.

Although the claim relating to the taped FBI statement of Scott was

summarily dismissed by the state supreme court on direct appeal, <u>Moore</u>, 633 A.2d

at 1124, n. 11, the trial court addressed the argument in disposing of Moore's post

trial motions and concluded as follows:

> The record indicates that the existence of the tape of the prior
> Scott statement was disclosed to [Moore's] trial counsel, and there
> is nothing in the record to indicate [Moore's] trial counsel were
> unaware of the content of the tape. [Moore's] present counsel
> contend that the prior statement made by Scott was inherently
> contradictory to his testimony at trial, and that it could therefore
> have been used to impeach his testimony. We find that proposition
> highly questionable for the reasons already set forth in the early

> portion of our Opinion[9], and it must also be noted that there are
> very serious questions about the content of the tape in view of the
> obvious revisions which have been made to the transcript of that
> tape.  For all of these reasons, we must reject the contention of
> [Moore's] present counsel that the Commonwealth has been shown
> to have violated in any way the mandate of the <u>Brady</u> case.

(Doc. 33, Doc. 10, pp 25-26).  It is undisputed that the state court relied on the

pertinent federal law in reaching the above conclusion.  And, all indications from

the state court record, are that state court's decision was not an unreasonable

determination of the facts presented to the state courts.

>    5.    <u>After Discovered Evidence</u>

Moore argues that he should be granted a new trial on the basis of after

discovered evidence.  (Doc. 1, Issue VIII, pp. 46-48).  During his direct appeal,

Moore sought a new trial based on after-discovered evidence in the form of the

testimony of two individuals, Anthony Jones and Willie Rush.  The court concluded

that the claim did not satisfy the standard for a new trial.  The sole purpose of

Jones's testimony was to impeach those connecting Moore with the murder.

Further, the testimony was available at or prior to the conclusion of the trial and

was not of such nature and character that a different verdict would result if a new

trial was granted.  <u>Moore</u>, 633 A.2d at 1136.  There was no proffer as to the nature of

Rush's testimony and, based upon inquiry of the trial court, the record indicates

that he advised the district attorney that he could not be of any assistance.

---

[9]<u>See</u> *supra* trial court quote discussing ineffective assistance of counsel, pp.
32-34.

Furthermore, he could not be located at the time of trial despite the fact that he was

served with a subpoena.  Id.  The  standard relied upon by the court in evaluating

this claim is as follows:

> After-discovered evidence is a proper basis for a new trial only
> if:
>
> (1) it has been discovered after the trial and could not have been
> obtained at or prior to the conclusion of the trial by the exercise of
> reasonable diligence; (2) is not merely corroborative or cumulative;
> (3) will not be used solely for impeaching credibility of a witness;
> and (4) is of such nature and character that a different verdict will
> likely result if a new trial is granted.
>
> Commonwealth v. Valderrama, 479 Pa. 500, 505, 388 A.2d 1042,
> 1045 (1978).

Moore, 633 A.2d at 1135-36.   This ground is not cognizable in this federal habeas

proceeding.  Throughout the state court proceedings, Moore wholly relied on

applicable state case law in arguing that he should have been granted a new trial on

the basis of after-discovered evidence.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has

made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

There is no basis for the issuance of a COA.

**VI.**   <u>**Conclusion**</u>

     In accordance with the foregoing, the petition for writ of habeas corpus will

be denied.


                                         <u> S/ Christopher C. Conner    </u>
                                         CHRISTOPHER C. CONNER
                                         United States District Judge


Dated:       December 11, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE MOORE,** | : | **CIVIL ACTION NO. 1:05-CV-0828** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, Commissioner,** | : | |
| **Pennsylvania Department of** | : | |
| **Corrections; DAVID DIGUGLIELMO,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at Graterford,** | : | |
| | : | |
| **Respondents** | : | |

## <u>ORDER</u>

AND NOW, this 11th day of December, 2007, upon consideration of the

petition for writ of habeas corpus, and for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1.    Petitioner's claim that the "[t]rial court erred in denying to petitioner, through present counsel, permission to retain expert services for investigation of various issues" is DENIED due to procedural default.

2.    All remaining claims presented in the petition are DENIED based upon petitioner's failure to demonstrate that (1) the applicable state court decisions were either contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) that those decisions were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as provided in 28 U.S.C. § 2254(d)(1) and (2).

3.      The Clerk of Court is directed to CLOSE this case.

4.      There is no basis for the issuance of a certificate of appealabilty.  <u>See</u> 28 U.S.C. § 2253(c).




   <u>S/ Christopher C. Conner</u>   
CHRISTOPHER C. CONNER
United States District Judge